# In the United States Court of Federal Claims

No. 13-821
(Filed: 2 January 2024)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| INGHAM REG'L MEDICAL CENTER, n/k/a MCLAREN GREATER LANSING, *et al.*, | * * * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Alexander J. Pires, Jr.* and *Diane Cooley*, Pires Cooley, of Washington, DC, with whom was, *Sean S. Zabaneh*, *Gregory A. Brodek*, *Arti Fotedar*, and *Kevin Moran*, Duane Morris LLP, of Philadelphia, PA, for plaintiffs.

*A. Bondurant Eley*, Senior Trial Counsel, with whom was *Steven J. Gillingham*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice, all of Washington, DC, for defendant.

## <u>ORDER</u>

**HOLTE, Judge.**

Plaintiffs are six hospitals purporting to represent a class of approximately 1,610 hospitals across the United States in a suit requesting, among other things, the Court interpret what the Federal Circuit has deemed an "extremely strange" contract.[1] This contract arose when hospitals complained the government underpaid reimbursements for Department of Defense Military Health System, TRICARE, outpatient services rendered between 2003 and 2009. In 2011, after completion of a data analysis, the government voluntarily entered a discretionary payment process contract with plaintiffs and offered net adjusted payments. In November 2022, after nine years of litigation and one Federal Circuit appeal, the Court granted in part and denied in part the government's Motion for Summary Judgment. As the only surviving breach of contract claims concern the government's duty to extract, analyze, and adjust line items from its

---

[1] 9 June 2022 Oral Arg. Tr. at 161:7–13, ECF No. 259 ("THE COURT: So the Federal Circuit panel, when the case was argued, characterized this agreement as extremely strange. [THE GOVERNMENT]: That is accurate. It is extremely strange. THE COURT: It is extremely strange? [THE GOVERNMENT]: It is.").

database, the Court required the parties to file a joint status report regarding the effect of summary judgment on plaintiffs' Renewed Motion to Certify a Class Action. Following a status conference, plaintiffs filed a discovery motion related to class certification. For the following reasons, the Court grants-in-part and denies-in-part plaintiffs' Motion.

## I.    Background

### A.    Factual and Procedural History[2]

TRICARE is a "military health care system" which "provides medical and dental care for current and former members of the military and their dependents." *Ingham Reg'l Med. Ctr. v. United States*, 874 F.3d 1341, 1342 (Fed. Cir. 2017). TRICARE Management Activity (TMA), a "field office in the Defense Department [(DoD)]," managed the TRICARE system.[3] *N. Mich. Hosps., Inc. v. Health Net Fed. Servs., LLC*, 344 F. App'x 731, 734 (3d Cir. 2009). In 2001, Congress amended the TRICARE statute to require DoD to follow Medicare rules when reimbursing outside healthcare providers. *Ingham Reg'l Med. Ctr.*, 874 F.3d at 1343 (citing 10 U.S.C. § 1079(j)(2) (2002)). To facilitate transition to Medicare rules, in 2005, DoD issued a Final Rule which specified "[f]or most outpatient services, hospitals would receive payments 'based on the TRICARE-allowable cost method in effect for professional providers or the [Civilian Health and Medical Program of the Uniformed Services] (CHAMPUS) Maximum Allowable Charge (CMAC).'" *Id.* (quoting TRICARE; Sub-Acute Care Program; Uniform Skilled Nursing Facility Benefit; Home Health Care Benefit; Adopting Medicare Payment Methods for Skilled Nursing Facilities and Home Health Care Providers, 70 Fed. Reg. 61368, 61371 (Oct. 24, 2005) (codified as amended at 32 C.F.R. § 199)). The TRICARE-allowable cost method "applied until 2009, when TRICARE introduced a new payment system for hospital outpatient services that was similar to the Medicare [Outpatient Prospective Payment System (OPPS)]." *Id.*

In response to hospital complaints of payment issues, TRICARE hired Kennell and Associates, a consulting firm, to "undertake a study [('Kennell study')] of the accuracy of its payments to the hospitals." *Ingham Reg'l Med. Ctr.*, 874 F.3d at 1343–44. The Kennell study "compared CMAC payments to the payments that would have been made using Medicare payment principles, and determined that DoD '(1) underpaid hospitals for outpatient radiology but, (2) correctly paid hospitals for all other outpatient services.'" *Id.* at 1344 (emphasis omitted) (citation omitted).

From the Kennell study findings, "DoD created a discretionary payment process [(DPP)]," and, on 25 April 2011, DoD notified hospitals by letter of the process for them to "request a review of their TRICARE reimbursements (the 'Letter')" and "published a document titled 'NOTICE TO HOSPITALS OF POTENTIAL ADJUSTMENT TO PAST PAYMENTS FOR OUTPATIENT RADIOLOGY SERVICES' (the 'Notice')" on the TRICARE website. *Id.*; App. to Def.'s MSJ at A3–A9, ECF No. 203-1. The Notice described a nine-step methodology to "govern the review of payments for hospital outpatient radiology services and [the] payment

---

[2] The factual and procedural history in this Order contains only those facts pertinent to plaintiffs' Motion for Discovery, ECF No. 269.
[3] The Defense Health Agency now manages activities previously managed by TMA.

of any discretionary net adjustments" by which hospitals could "request an analysis of their claims data for possible discretionary adjustment." App. to Def.'s MSJ at A7.

On 21 October 2013, plaintiffs brought this action claiming the government underpaid them for certain outpatient medical services they provided between 1 August 2003 and 1 May 2009. *See Ingham Reg'l Med. Ctr. v United States*, 126 Fed. Cl. 1, 9 (2016), *aff'd in part, rev'd in part*, 874 F.3d 1341 (Fed. Cir. 2017). Plaintiffs allege the approximately six years of underpayment breached two contracts and violated various statutory and regulatory provisions. *Id.* Plaintiffs estimate several thousand hospitals submitted requests for discretionary payment, including the six named plaintiffs in this case. *See id.* at 16. Plaintiffs therefore seek to represent a class of as many as 1,610 similarly situated hospitals. *See* Pls.' Mem. in Supp. of Mot. to Certify at 1, ECF No. 77; *see also* Mot. to Certify, ECF No. 76.

On 11 February 2020, during the parties' second discovery period, plaintiffs requested from the government "[a]ny and all data concerning hospital outpatient services claims and TRICARE reimbursement for hospital outpatient services claims during the relevant time period . . . ." *See* App. to Pls.' Disc. Mot. at 23, ECF No. 269; Gov't's Disc. Resp. at 11, ECF No. 270. The government rejected this request for records from "thousands of hospitals . . . that are not [named] plaintiffs" on 16 March 2020 and instead only "produce[d] the data requested for the six plaintiffs in this lawsuit." App. to Pls.' Disc. Mot. at 29. Plaintiffs filed a motion to clarify the case schedule or, in the alternative, to compel discovery of "data and documents relating to the [g]overnment's calculation of payments under the [DPP] for *all putative class members, not just the named [p]laintiffs*" on 31 July 2020, the last day of discovery. See Pls.' Mot. to Compel ("Pl.'s MTC") at 2, ECF No. 161 (emphasis added). In response, the government stated, "[t]here is no basis for the Court to . . . compel extraneous discovery of hospitals that are not now in this lawsuit." Def.'s Resp. to Pl.'s MTC ("Def.'s MTC Resp.") at 2, ECF No. 166. During a status conference on 13 October 2020, the parties agreed to table plaintiffs' discovery request and associated Motion to Compel pending resolution of the government's then-pending Motion for Reconsideration, ECF No. 150, and any additional potentially dispositive motions. *See* 13 Oct. 2020 Tr. ("SC Tr.") at 27:13–28:9, ECF No. 178 ("THE COURT: . . . So to state differently, then, [plaintiffs agree] to stay consideration of this particular [discovery] issue until class certification is decided? [PLAINTIFFS:] Yes, that would be fine. THE COURT: . . . [W]ould the [g]overnment agree with that? [THE GOVERNMENT:] Yes, [y]our [h]onor . . . [but] the [g]overnment still intends to file a motion for summary judgment. . . . THE COURT: Okay. So on the [g]overnment's motion for summary judgment . . . that should probably not be filed until at least after the motion for reconsideration is resolved? [THE GOVERNMENT:] That's correct.").

On 5 June 2020, plaintiffs filed a renewed motion to certify a class and appoint class counsel ("Pls.' Class Cert."), ECF No. 146, which the parties fully briefed. *See* Def.'s Class Cert. Resp., ECF No. 207; Pls.' Class Cert. Reply, EF No. 226. On 26 August 2021, the government filed a motion for summary judgment ("Def.'s MSJ"), ECF No. 203. Plaintiffs filed an opposition to the government's motion for summary judgment on 4 February 2022 ("Pls.' MSJ Resp."), ECF No. 225, and on 11 March 2022, the government filed a reply ("Def.'s MSJ Reply"), ECF No. 234.

"The Court [granted] the government's [M]otion for [S]ummary [J]udgment as to plaintiffs' hospital-data duty and mutual mistake of fact claims but [denied] the government's [M]otion as to plaintiffs' TMA-data duty and alternate zip code claims[,] . . . [and stayed] the evidentiary motions" on 28 November 2022.  *Ingham Reg'l Med. Ctr. v. United States*, 163 Fed. Cl. 384, 428 (2022).  The Court, deeming the government's settlement arrangements with plaintiffs to be contracts (the "DPP Contracts"), specifically found "the DPP Contract[s] only obligated TMA to use its data, not the hospitals' data," leaving the government's data as the only set relevant to this case.  *Id.* at 427.  The Court held the government's (1) "failure to extract thirteen line items [meeting all qualifications for extraction] for Integris Baptist and Integris Bass Baptist"; and (2) failure to adjust "five . . . line items [for Integris Baptist] during the DPP because of an alternate zip code" constituted breach of the DPP Contracts.  *Id.* at 409–10, 412. "Based on the summary judgment holding . . . the Court [found it needed] further information regarding how plaintiffs in this post-summary judgment smaller class would meet the requirements for class certification."  *Id.*  "The Court accordingly decline[d] to rule on plaintiffs' class certification motion . . . [a]s the only surviving claims are breach of contract for failure to follow the DPP in a few limited circumstances, [and] the parties did not adequately brief the narrower proposed class of plaintiffs arising under the remaining claims."  *Id.*  The Court ordered the parties to file "a joint status report [(JSR)] providing the parties' views on class certification for the smaller class of plaintiffs affected by the government's breach of contract for failure to follow the DPP in limited circumstances and on whether further briefing is necessary."  *Id.*

On 28 December 2022, the parties filed a JSR providing their opposing positions on whether plaintiffs can request further discovery related to class certification:  "plaintiffs expressly reserve, and do not waive, any rights that they may currently have, or may have in the future, with respect to additional class certification fact or expert discovery"; and "the [g]overnment opposes any further fact or expert discovery in connection with plaintiffs' amended/supplemental motion for class certification, and, in agreeing to the foregoing briefing schedule, is not agreeing to any further fact or expert discovery in this case."  28 Dec. 2022 JSR at 2, ECF No. 262.  Plaintiffs then filed a motion requesting leave to conduct further discovery and submit a supplemental expert report on 21 March 2023 ("plaintiffs' Discovery Motion"). Pls.' Disc. Mot., ECF No. 269.  The government filed a response on 21 April 2023.  Gov't's Disc. Resp.  Plaintiffs filed a reply on 9 May 2023.  Pls.' Disc. Reply, ECF No. 271.  The Court held oral argument on 19 July 2023.  *See* 5 June 2023 Order, ECF No. 272; 19 July 2023 Oral Arg. Tr. ("Tr."), ECF No. 276.

On 31 August 2023, following oral argument on plaintiffs' Discovery Motion, the government filed an unopposed motion to stay the case for the government to complete a "second look at the records [analyzed] . . . in the July 2019 expert report of David Kennell . . . that were the subject of one of the Court's liability rulings on summary judgment."  Def.'s Mot. to Stay at 1, ECF No. 277.  The Court granted this Motion on the same day.  Order, ECF No. 278.  On 25 October 2023, the parties filed a JSR, ECF No. 284, in which the government addressed its findings[4] and "proposed [a] way forward" in this case.  25 Oct. 2023 JSR at 2.  In

---

[4] In the 25 October 2023 JSR, the government explained twelve of the thirteen line items the government failed to extract for Integris Baptist and Integris Bass Baptist, *see Ingham Reg'l Med. Ctr. v. United States*, 163 Fed. Cl. 384, 412 (2022), were missed due to a "now-known" error in which "a very small set of patients comprised of military spouses . . . under age 65" were overlooked because they "receive Medicare Part A" but not Medicare Part B,

response to the government's data analysis, plaintiffs noted in the JSR "the [g]overnment's update makes clear that [additional g]overnment data is required to evaluate which hospitals were affected by the [g]overnment's breach of the DPP." *Id.* at 16. Plaintiffs then likewise "[p]roposed [n]ext [s]teps" in this case, beginning with resolution of their Discovery Motion. *Id.* at 18.

On 19 December 2023, the Court held a telephonic status conference to understand the technical aspects of plaintiffs' discovery requests as they relate to the DPP process and algorithm. *See* Scheduling Order, ECF No. 285.

## B. Discovery Requests at Issue

Plaintiffs seek leave to perform additional discovery stemming from the Court's summary judgment holding "TMA [breached its duty] . . . to extract, analyze, and adjust radiology data from its database" by failing to (1) adjust "five . . . line items [for Integris Baptist] during the DPP because of an alternate zip code" and (2) "extract . . . thirteen line items [meeting the criteria for extraction] for Integris Baptist and Integris Bass Baptist." *Ingham Reg'l Med. Ctr.*, 163 Fed. Cl. at 409–10, 412. Plaintiffs' sought-after discovery includes a request for "the same data for the [putative] class hospitals" as plaintiffs currently "have [for the] six named [p]laintiffs," Tr. at 50:14–19, to assist plaintiffs in identifying "line items in [TMA's radiology data] . . . that met the [DPP C]ontract criteria but were excluded from the adjustment . . . ." Gov't's Disc. Resp. at 15. In all, plaintiffs "seek leave to (1) depose a [g]overnment corporate designee, (2) serve document requests, and (3) thereafter serve a supplemental expert report on the relevant class issues." Pls.' Disc. Mot. at 2. Plaintiffs further detail the purpose of each request:

> First, [p]laintiffs seek leave to depose a [g]overnment corporate designee to identify the various data sources in the [g]overnment's possession from the relevant time period. Second, [p]laintiffs seek leave to serve . . . document requests to obtain critical data related to each Potential Class member hospital. Third, once the above discovery is completed, [p]laintiffs seek leave to serve a supplemental expert report that applies the DPP methodology to the relevant claims data to identify the Final Class.

*Id.* at 6–7 (footnote omitted) (citations omitted).

The second request, mirroring plaintiffs' February 2020 request for "[a]ny and all data concerning hospital outpatient service claims and TRICARE reimbursement for hospital outpatient services claims during the relevant time period," App. to Pl.'s Disc. Mot. at 23, comprises "(1) all information Kennell used in the DPP calculations for each Potential Class member hospital, as well as the underlying calculations[;] and (2) all hospital outpatient claims

---

meaning the "outpatient services that these individuals receive are paid for . . . by TRICARE." 25 Oct. JSR at 4, ECF No. 284. As a result of this Medicare arrangement, line items for this group of patients were not extracted as the individuals were mistakenly deemed Medicare, rather than TRICARE, recipients for procedures within the scope of the DPP. *Id.* The cause of the thirteenth unextracted line item remains unclear. *Id.* at 5.

data available for each of the Potential Class member hospitals during the relevant time period." Pl.'s Disc. Mot. at 8–9.  This request includes:  (1) CMAC rate files "needed to apply the DPP methodology"; (2) "[d]ata on hospital outpatient radiology services claim line items for each Potential Class member hospital"; (3) "[d]ata concerning hospital outpatient services claim line items for each Potential Class member hospital" to verify the radiology files are complete; and (4) "TRICARE Encounter Data ('TED') records and Health Care Service Records ('HCSR')." *Id.* at 9–10.

## II.    Applicable Law

This court's application of the Rules of the United States Court of Federal Claims ("RCFC") is guided by case law interpreting the Federal Rules of Civil Procedure (FRCP).  *See* RCFC rules committee's note to 2002 revision ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").  Regarding the scope of discovery, the rules of this court provide:

> [P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

RCFC 26(b)(1).  "Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court."  *Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984).  The Court of Federal Claims generally "afford[s] a liberal treatment to the rules of discovery."  *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016), *aff'd in part and vacated in part on other grounds*, 879 F.3d 1354 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 478 (2018) (mem.).  "[T]he [C]ourt must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."  *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 1983 amendment).

Further, "[a] trial court 'has wide discretion in setting the limits of discovery.'"  *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)).  This court has previously found such "discretion [extends to] . . . deciding whether to grant a motion to . . . reopen discovery."  *Croman Corp. v. United States*, 94 Fed. Cl. 157, 160 (2010) (citing *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260 (Fed. Cir. 1991)); *see also Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1322–23 (Fed. Cir. 2010) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)) (applying Ninth Circuit law in determining trial court did not abuse its discretion in refusing to reopen discovery).

Notwithstanding, modification of a court-imposed schedule, including a discovery schedule, may be done "only for good cause and with the judge's consent."  RCFC 16(b)(4).  In

*High Point Design*, the Federal Circuit applied Second Circuit law[5] when discussing the good cause standard of FRCP 16(b)(4) for amending a case schedule.  "When assessing whether good cause has been shown, 'the primary consideration is whether the moving party can demonstrate diligence.'"  *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)); *see also Adv. Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011) ("Under the good cause standard, the threshold inquiry is whether the movant has been diligent." (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008))).  This "requires a showing that even with the exercise of due diligence the moving party could not meet the order's timetable."  *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002) (applying Ninth Circuit law in finding defendant's attempt to amend the pleadings first required modification of the scheduling order under FRCP 16(b)(4)).

Trial courts may also consider "other relevant factors including, in particular, whether allowing the amendment . . . will prejudice [the opposing party]."  *High Point Design*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244); 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.2 (3d ed. 1998) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").  Prejudice related to the reopening of discovery may involve the delay of proceedings.  *Wordtech Sys.*, 609 F.3d at 1322 ("[A] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999))).

## III.   Parties' Arguments

Plaintiffs contend "good cause exists for [p]laintiffs to conduct . . . additional limited discovery," Pls.' Disc. Mot. at 7–8 (citing *Geneva Pharms. Tech. Corp. v. Barr Lab's, Inc.*, Nos. 98 Civ. 861, 99 Civ. 3687, 2005 WL 2132438, at \*5 (S.D.N.Y. Sept. 6, 2005)), largely mirroring their "live and pending request for discovery [from February 2020] that[ ha]s been tabled" since October 2020, Tr. at 37:16–17; *see* SC Tr. at 27:13–23.  Specifically, plaintiffs argue, "[t]he Court's ruling on the [g]overnment's Summary Judgment Motion is a material event that has fundamentally altered the scope of this case."  Pl.'s Disc. Mot. at 7–8 (citing *Ingham Reg'l Med. Ctr. v. United States*, 163 Fed. Cl. 384, 428 (2022) ("[T]he parties did not adequately brief the narrower proposed class of plaintiffs arising under the remaining claims.")).  Plaintiffs state the requested "discovery will allow them to provide the Court with the information required for the determination of the Final Class, and that this will greatly assist the Court with its ruling on class certification."  *Id.* at 10.

At oral argument, the government acknowledged "[p]laintiffs['] [2020] request [for] all class hospital data" concerned much of the same information plaintiffs are "asking for now."  Tr. at 103:7–17.  The government, however, maintains "plaintiffs' motion to reopen fact and expert discovery should be denied."  Gov't's Disc. Resp. at 17.  Specifically, the government argues plaintiffs "filed this case, moved for class certification twice, and proceeded through two full rounds of fact and expert discovery, based upon . . . [p]laintiffs' view of the law."  *Id.* at 16.  The

---

[5] RCFC 16(b)(4) is identical to the corresponding Rule 16(b)(4) of the Federal Rules of Civil Procedure.

government therefore argues plaintiffs should not be permitted to "reopen fact and expert discovery" simply because "on summary judgment," the "legal theories that animated plaintiffs' [previous] discovery and expert reports have been shown . . . to be . . . wrong." *Id.* at 16–17. The government argues "[a] party's realization that it elected to pursue the wrong litigation strategy is not good cause for amending a schedule," so plaintiffs have failed to show good cause to reopen discovery as they request. Gov't's Disc. Resp. at 17 (quoting *Sys. Fuels, Inc. v. United States*, 111 Fed. Cl. 381, 383 (2013)). Alluding to the standard for reopening discovery, the government argues "no actions by plaintiffs . . . even remotely approximate the showing of diligence required under RCFC 16 . . . ." *Id.* at 35. The government also argues plaintiffs' requests "overwhelming[ly] and incurabl[y] prejudice . . . the [g]overnment." *Id.* at 38.

## IV.    Whether Good Cause Exists to Reopen Discovery

As noted *supra* Section III, plaintiffs contend "good cause exists for [p]laintiffs to conduct . . . additional limited discovery," Pls.' Disc. Mot. at 7–8 (citing *Geneva Pharms. Tech. Corp. v. Barr Lab'ys, Inc.*, Nos. 98 Civ. 861, 99 Civ. 3687, 2005 WL 2132438, at *5 (S.D.N.Y. Sept. 6, 2005)), largely mirroring their "live and pending request for discovery [from February 2020] that[ ha]s been tabled" since October 2020, when the parties agreed to first proceed with the government's Motion for Reconsideration and Motion for Summary Judgment. Tr. at 37:16–17; *see* SC Tr. at 27:13–23. Plaintiffs believe the requested "discovery will allow them to provide the Court with the information required for the determination of the Final Class, and that this will greatly assist the Court with its ruling on class certification." Pl.'s Disc. Mot. at 10. In contrast, the government asserts plaintiffs have, in two previous rounds of discovery and in their summary judgment briefing, chosen to pursue a litigation strategy based on a class damages model relying on hospital and government data and cannot now justify reopening discovery because they need to change tactics following the Court's summary judgment ruling limiting the scope of this case to the government's data. *See* Gov't's Disc. Resp. at 22–23. Specifically, the government contends plaintiffs have neither made the required showing of diligence during past discovery periods to justify modifying the Court's discovery schedule nor adequately refuted the government's claim this discovery is prejudicial. *See* Gov't's Disc. Resp. at 28, 35.

"A trial court 'has wide discretion in setting the limits of discovery.'" *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)). This court has previously found such "discretion [is applicable] in deciding whether to grant a motion to . . . reopen discovery." *Croman Corp. v. United States*, 94 Fed. Cl. 157, 160 (2010) (citing *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260 (Fed. Cir. 1991)). RCFC 16(b)(4) permits modification of a court-imposed schedule, such as to re-open discovery, "only for good cause and with the judge's consent."[6] Good cause "requires a showing that even with the exercise of due diligence the moving party could not meet the order's timetable." *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002) (applying Ninth Circuit law in finding defendant's attempt to amend the

---

[6] At oral argument, the parties agreed plaintiffs are requesting the Court reopen discovery, meaning this good cause standard applies. Tr. 99:14–19: "[PLAINTIFFS:] I think, as between [supplementation and reopening], th[ese requests] probably fit[] better in the reopening category as between those two . . . . THE COURT: So . . . the standard for reopening is good cause? [PLAINTIFFS:] Yes. THE COURT: [The government], [do] you agree? [THE GOVERNMENT:] I agree."

pleadings first required modification of the scheduling order under FRCP 16(b)(4)). Likewise, in determining whether good cause exists to reopen discovery, a trial court may consider "other relevant factors including, in particular, whether allowing the amendment . . . will prejudice [the opposing party]." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). The Court accordingly must determine whether good cause exists to reopen discovery as requested by plaintiffs by analyzing plaintiffs' diligence and whether the requested discovery prejudices the government. The Court begins with plaintiffs' document requests.

### A.     Document Requests

Plaintiffs request the government turn over "critical data related to each Potential Class member hospital" and argue "denying 'precertification discovery where it is necessary to determine the existence of a class is an abuse of discretion.'" Pls.' Disc. Mot. at 6–7; Pls.' Disc. Reply at 2 (quoting *Perez v. Safelite Grp. Inc.*, 553 F. App'x 667, 669 (9th Cir. 2014)). These document requests specifically target "(1) all information Kennell used in the DPP calculations for each Potential Class member hospital, as well as the underlying calculations, and (2) all hospital outpatient claims data available for each of the Potential Class member hospitals during the relevant time period." Pls.' Disc. Mot. at 8–9. Plaintiffs' goal is to acquire all "radiology line item[]" data and other information necessary to "apply the DPP methodology" to all of the putative class members' claims data from the DPP period. *Id.* at 9. Plaintiffs contend "good cause exists" for the Court to reopen discovery with respect to these documents because the "Court's ruling on the [g]overnment's Summary Judgment Motion is a material event that . . . fundamentally altered the scope of this case." *Id.* at 8. Namely, plaintiffs' "damages are now limited to those claims involving errors in the [g]overnment's data," so plaintiffs allege this data, which "by its very nature [is] exclusively in [the government's] possession," is necessary "to identify the class members." Pls.' Disc. Reply at 3; *see Ingham Reg'l Med. Ctr. v. United States*, 163 Fed. Cl. 384, 427–29 (2022). Further, plaintiffs believe reopening discovery for this request is appropriate because in February 2020, during discovery, plaintiffs served a request for production on the government for the same "data concerning hospital outpatient services, claims, and . . . reimbursement for all class hospitals." Tr. at 41:5–11. Plaintiffs likewise moved to compel this discovery in July 2020. Pls.' Disc. Reply at 4 ("Plaintiffs also later moved for an order to conduct class discovery or for the [g]overnment to alternatively produce documents for all hospitals."). Plaintiffs argue tabling this request and motion at the end of October 2020 while the case "proceeded with reconsideration, summary judgment, and other procedural" items did not do away with their "live and pending request for [this] discovery." Tr. at 41:16–17, 37:14–25, 128:5–6. With respect to prejudice, plaintiffs clarify their requests "will not prejudice the" government primarily because "the benefit to this case from the discovery would significantly outweigh any burden," Pls.' Disc. Reply at 8–9 (first citing *Davita HealthCare Partners, Inc. v. United States*, 125 Fed. Cl. 394, 402 n.6 (2016); and then citing *Kennedy Heights Apartments Ltd. I v. United States*, 2005 WL 6112633, at *4 (Fed. Cl. Apr. 26, 2005)), as this discovery will "assist the court with its ruling on class certification." Pls.' Disc. Mot. at 9–10. Further, plaintiffs contend any prejudice could be cured at trial by cross-examination of plaintiffs' expert, who will use this data in a future supplemental report. Pls.' Disc. Reply at 10 (citing *Panasonic Commc'ns Corp. of Am. v. United States*, 108 Fed. Cl. 412, 416 (2013)).

The government argues good cause does not exist to reopen discovery as requested by plaintiffs. With respect to diligence, the government first asserts plaintiffs' 31 July 2020 Motion regarding class discovery was not diligent because it was filed on the last day of the discovery period. Gov't's Disc. Resp. at 33–34. Next, the government argues "[p]laintiffs make no claim that it was impossible during two separate discovery periods for them to have served on the [g]overnment . . . the proposed discovery requests . . . because it obviously was not." *Id.* at 28 (citation omitted). Rather, per the government, "plaintiffs disregarded, rather than responding to, evidence, analysis, and law that was inconsistent with their theories of the case, even when *the [g]overnment* brought such issues to the fore." *Id.* at 30. The government argues "plaintiffs ignored these issues at their peril throughout the entire second period of fact and expert discovery that followed, and that means that they were not diligent under the law" and are not now entitled to discovery to assist them in changing their theory of the case. *Id.* at 31–32. Concerning prejudice, the government argues "plaintiffs are proposing fact discovery on a scale never before undertaken in this case, a new expert report for the [g]overnment to then respond to, more expert depositions, and, no doubt, additional *Daubert* and class-related motions practice, resulting in substantial delay in bringing this matter to resolution." *Id.* at 36 (footnote omitted). "Permitting plaintiffs to now evade a long overdue reckoning, and attempt to moot [the government's motions to exclude plaintiffs' expert reports], in addition to being completely contrary to law, [according to the government,] deprives the [g]overnment of its day in court for what should be an imminent resolution of this matter." *Id.*

### 1.    Diligence

A finding of diligence sufficient to modify a case schedule "requires a showing that even with the exercise of due diligence the moving party could not meet the order's timetable." *Slip Track Sys., Inc.*, 304 F.3d at 1270 (applying Ninth Circuit law in finding defendant's attempt to amend the pleadings first required modification of the scheduling order under FRCP 16(b)(4)). On 11 February 2020, at the very early stages of the "re-opened period of fact discovery," plaintiffs "served the [g]overnment with additional document requests," including a request for "[a]ny and all data concerning hospital outpatient services claims and TRICARE reimbursement for hospital outpatient services claims during the relevant time period . . . ." Gov't's Disc. Resp. at 11 (citations omitted); *see also* App. to Pls.' Disc. Mot. at 23. At the time, the government "objected to this request" and only "produce[d] the data requested for the six [named] plaintiffs." *Id.* at 11–12 (citations omitted). Over the next several months, the parties continued with fact and expert discovery, during which time the Court "established a schedule for briefing on class certification and summary judgment." *Id.* at 13 (citing Order at 2, ECF No. 143). On 31 July 2020, "the date . . . both fact and expert discovery closed, plaintiffs filed a motion . . . [to] compel[] the [g]overnment to produce documents for all hospitals, rather than for just the six representative plaintiffs." *Id.* at 14. Plaintiffs therefore requested the data at issue in this document request at least twice before the instant Motion—once on 11 February 2020 and again on 31 July 2020. Tr. at 81:10–11 ("[PLAINTIFFS:] [W]e did ask for all of those things that [the government is] talking about [before we t]abled the issues . . . ."). They thus argue they "meet [the] diligence [standard] here because [they] asked for" this information "a long time ago" and continued to believe it "was a live and open issue." Tr. at 128:5–6; Tr. at 104:25–105:9 ("[PLAINTIFFS:] We served the discovery request in the discovery period. We got objections from the [g]overnment. We conferred several times with [the government] about this to figure

out what we are doing here . . . .  We then had the conference with the Court because we had filed our motion [to compel] and the [g]overnment fought to arrange things in the way they arranged.  So we walked away from that believing this [discovery] was a live and open issue.");  *see* 28 Dec. 2022 JSR at 2.

The government's first diligence argument, as noted *supra* Section IV.A, is plaintiffs filed their Motion to Compel on the final day of discovery and thus did not diligently pursue this request.  Gov't Disc. Resp. at 33–34; Tr. at 84:21–23 ("[THE GOVERNMENT:]  [Plaintiffs] did nothing between March and July.  There was no agreement to table during that four-month period.  And then in July, they filed a motion [to compel].")  Despite the already pending 11 February 2020 "request for all class hospital data," the government contends plaintiffs "should have filed more motions to compel" earlier in the discovery period.  Tr. at 85:4–10; Tr. at 107:2–5 ("[PLAINTIFFS:]  [The government is saying] we raised [these discovery issues] too long ago and didn't come back often enough.").  To the extent the government alleges "filing a motion to compel on the very last day of discovery is . . . *untimely*, not diligent," however, the government overlooks the significance of plaintiffs' timely February 2020 request.  *See* Gov't Disc. Resp. at 34.  Plaintiffs did not first make this request the day discovery closed; they asked the government to produce these documents early in the discovery period.  Pls.' Disc. Mot. at 4–5.  Plaintiffs then "conferred several times with" the government and waited to see whether the government's production would be sufficiently responsive to their February 2020 request despite the government's objection.  Tr. at 104:24–105:6 ("[PLAINTIFFS]:  We served the discovery request in the discovery period.  We got objections from the [g]overnment.  We conferred several times with [the government] about this . . . We then . . . filed our motion. . . .").  Thus, only when it became clear the government was not going to produce plaintiffs' requested information or any comparable data in the final days of the discovery period did plaintiffs file a motion to compel.  *Id.*  Further, the government's cited cases for the proposition motions filed at the end of discovery are untimely are from out-of-circuit district courts and contain factual situations inapposite to this case.  *See* Gov't Disc. Resp. at 34 (first citing *Rainbow Energy Mktg. Corp. v. DC Transco, LLC*, No. 21-CV-313, 2022 WL 17365260, at *2 (W.D. Tex. Dec. 1, 2022) (denying a renewed motion to compel after:  (1) the plaintiff's initial motion was denied, (2) the plaintiff filed a motion to extend discovery after the period had closed, and (3) the plaintiff filed a renewed motion to compel on the last day of extended discovery); then citing *U.S. ex rel. Gohil v. Sanofi U.S. Servs., Inc.*, No. 02-2964, 2020 WL 1888966, at *4 (E.D. Pa. Apr. 16, 2020) (rejecting a motion to compel in part because the requesting party made a "misrepresentation that it did not know" the importance of the information until just before the close of discovery); then citing *Summy-Long v. Pa. State Univ.*, No. 06–cv–1117, 2015 WL 5924505, at *2, *5 (M.D. Pa. Oct. 9, 2015) (denying the plaintiff's motion to compel "because [her] request [wa]s overly broad and unduly burdensome and because granting further discovery extensions . . . would strain the bounds of reasonableness and fairness to all litigants"); then citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332–33, 337 (N.D. Ill. 2005) (acknowledging there is "great[] uncertainty" as to whether courts should deny motions to compel filed "very close to the discovery cut-off date" and recognizing "the matter is [generally] left to the broad discretion" of the trial court "to control discovery"); then citing *Toone v. Fed. Express Corp.*, No. Civ. A. 96-2450, 1997 WL 446257, at *8 (D.D.C. July 30, 1997) (denying the plaintiff's motion to compel filed on the last day of discovery because (1) given the close proximity to the original date for trial, "the defendant could have responded to the request . . . on

the day of the original trial date," and (2) it was moot); and then citing *Babcock v. CAE-Link Corp.*, 878 F. Supp. 377, 387 (N.D.N.Y. 1995) (denying a motion to compel regarding discovery requests served on the last day of discovery). The Court therefore is not persuaded plaintiffs' Motion to Compel was untimely. *Schism*, 316 F.3d at 1300 (quoting *Moore*, 927 F.2d at 1197).

The government further contends "[p]laintiffs make no claim that it was impossible during two separate discovery periods for them to have served on the [g]overnment" this "proposed discovery request[]." Def.'s Disc. Resp. at 28. The government argues plaintiffs' "tunnel vision" with respect to their legal theory caused plaintiffs to ignore "evidence, analysis, and law" not directly consistent with "their theories of the case, even when the *[g]overnment* brought such issues to the fore." *Id.* at 29–30. "Turning a blind eye . . . [due to] legal error is not the same thing as having the inability to meet court deadlines," according to the government, so "plaintiffs cannot demonstrate the requisite diligence." *Id.* at 30. Although plaintiffs did not file "more motions to compel," plaintiffs timely made their February 2020 request and timely filed their July 2020 Motion to Compel, *supra*. *See* Tr. at 85:4–9. To the extent the government alleges plaintiffs are not entitled to reopen discovery to amend their litigation strategy because the government "unmasked on summary judgment" plaintiffs' "legal errors," the government overlooks its own admission at oral argument, "[p]laintiffs' request[s] [for] all class hospital data" in February and July 2020 sought the same data "[plaintiffs a]re asking for now." Tr. 103:7–17; Def.'s Disc. Resp. at 28. Contrary to the government's argument, plaintiffs therefore did not have "tunnel vision" causing them to ignore the requested evidence earlier in this litigation. *See* Def.'s Disc. Resp. at 28–30. Rather, plaintiffs requested this data during the appropriate discovery periods, only to have their request put on hold "because the [g]overnment ha[d] additional motions" it wished the Court to first decide. *See* Tr. at 85:12–21 (the court); Pls.' Disc. Mot. at 4; App. to Pl.'s Disc. Mot. at 23; Tr. at 105:5–9; Def.'s Disc. Resp. at 14 ("Ultimately, the issues raised by this motion [to compel] were tabled by agreement of the parties."); Tr. 55:5–6 ("[PLAINTIFFS:] [T]he [g]overnment fought tooth and nail [to have the Court] hear [their] summary judgment motion first."). Plaintiffs have thus considered these requests "a live and open issue" pending resolution of the government's motions ever since, prompting them to file the instant Motion upon the Court issuing its Summary Judgment Order in November 2022. Tr. at 105:8–9 ("[PLAINTIFFS:] [W]e walked away from that [tabling discussion] believing this [discovery] was a live and open issue.").

Finally, while this "data [may] not [have been] necessary for summary judgment . . . [it is] for class certification."[7] Tr. at 111:10–11 (plaintiffs); *Clippinger v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 1894821, at *2 ("[C]lass certification discovery is not relevant [at the summary judgment stage]."); Tr. at 111:8–11 ("[PLAINTIFFS:] Well, I think like in *Clippinger*, there is some wisdom to the concept that maybe all of that data is not necessary for summary judgment, but then becomes necessary for class certification."). To that end, the government

---

[7] To the extent the government relies on plaintiffs' 13 April 2020 statement plaintiffs "will not need this information [pertaining to hospitals other than the six named plaintiffs] prior to resolving [p]laintiffs' [M]otion for [C]lass [C]ertification," the government overlooks the substantial change in circumstances discussed *infra* Section IV.B.1. *See* Def.'s Disc. Resp. at 12–13 (quoting 21 May 2020 JSR at 3–4, ECF No. 140). The government likewise ignores plaintiffs' agreement to table these discovery requests temporarily in October 2020, at which time plaintiffs acknowledged they would eventually re-raise these requests, even if—at the time—the plan was to do so after class certification. *See* Tr. at 85:12–21, 55:5–6.

cannot "object[] to [plaintiffs' document] request" in 2020 as "irrelevant and not proportional to the needs of the case insofar as plaintiffs seek . . . [information from] thousands of hospitals" only to now argue it is too late for this discovery and "plaintiffs [have] squandered . . . their allotted discovery periods . . . ." Gov't's Disc. Resp. at 11, 28; Tr. at 106:7–14 ("[PLAINTIFFS:]  [I]t's almost like the [g]overnment—they're playing gotcha here. . . . [T]hey didn't want to give us the information at the time [of discovery] and then they say, well, here's summary judgment first and we can defer this until later . . . and now we've got a summary judgment opinion and now [they] say gotcha . . . ."). Nor can the government object to turning over the requested data in 2020 and now only to "use [plaintiffs'] lack of this data as a sword" come class certification. Tr. at 126:23–127:2. Indeed, "this has never been a case where" plaintiffs "said we're not going to look at that [requested] data . . . [or] we're not eventually going to be coming for that." Tr. at 126:18–20. To the contrary, plaintiffs "requested this [data] during discovery," and have long maintained this discovery "is the way to" "figure out . . . what are we dealing with" from a class perspective, including in the JSR filed after the Court's November 2022 Summary Judgment Order, in which plaintiffs reserved the right to move for "additional class certification fact or expert discovery." Tr. at 44:10, 56:21–22; 28 Dec. 2022 JSR at 2. By way of the government's objection to plaintiffs' February 2020 request and the parties' tabling this request in October 2020, plaintiffs "even with the exercise of due diligence[,]" could not have obtained the requested information in a way sufficient to "meet the [Court's discovery] timetable." *Slip Track Sys., Inc.*, 304 F.3d at 1270. Had they "received the data in 2020," they "would have . . . run the DPP" for all potential class members as plaintiffs now request the opportunity to. Tr. at 113:12–15. Instead, plaintiffs did not have access to the data so continued to raise this request at all reasonably appropriate times. *See* Tr. at 112:8–9 ("[PLAINTIFFS:]  [I]t was not possible for us to have done this [DPP] calculation without th[is] data."). The Court accordingly finds plaintiffs were sufficiently diligent to justify a finding of good cause to reopen fact discovery as to plaintiffs' document request for "critical data related to each Potential Class member hospital," Pls.' Disc. Mot. at 6. *Slip Track Sys., Inc.*, 304 F.2d at 1270.

## 2.    Prejudice

In considering whether to reopen discovery, a trial court may consider, in addition to the requesting party's diligence, "other relevant factors including, in particular, whether allowing the amendment . . . will prejudice [the opposing party]." *High Point Design LLC*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244). Prejudice related to the reopening of discovery may involve the delay of proceedings. *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010) ("[A] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999))). Further, RCFC 26(b)(1) provides:

> [P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit.

RCFC 26(b)(1). "Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court." *Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984).

The government contends reopening discovery is prejudicial because "plaintiffs are proposing fact discovery on a scale never before undertaken in this case, a new expert report for the [g]overnment to then respond to, more expert depositions, and, no doubt, additional *Daubert* and class-related motions practice, resulting in substantial delay in bringing this matter to resolution." Gov't Disc. Resp. at 35–36 (footnote omitted). Plaintiffs, on the other hand, argue: (1) the sought after data "is . . . exclusively in [the government's] possession"; and (2) their request will not prejudice the government because it will have an opportunity to oppose plaintiffs' expert report. Pls.' Disc. Reply at 3, 8. Even if there is any prejudice to the government, plaintiffs assert "the benefit to this case from the discovery would significantly outweigh any burden to the parties," *id.* at 9, because of the assistance the discovery would provide the Court in ruling on class certification of the "narrower proposed class of plaintiffs," *Ingham Reg'l Med. Ctr.*, 163 Fed. Cl. at 428, left after summary judgment. *Id.* at 5, 9–10 (first citing *Ingham Reg'l Med. Ctr.*, 163 Fed. Cl. at 428; and then citing *Alta Wind I Owner Lessor C v. United States*, 154 Fed. Cl. 204, 217 (2021)). Indeed, plaintiffs argue "produc[ing] the data . . . [now will be] more efficient [than production after certification] [a]s there will be less hypothetical back-and-forth between the parties [during certification briefing]" if the government's data is available to all sides. Tr. at 118:2–6. Any prejudice could also be cured at trial by cross-examination of plaintiffs' expert, plaintiffs contend. Pls.' Disc. Reply at 10.

The Court's Summary Judgment Order indicated "the Court . . . needs further information regarding how plaintiffs in this post-summary judgment smaller class would meet the requirements for class certification" before deciding plaintiffs' motion for class certification. *Ingham Reg'l Med. Ctr.*, 163 Fed. Cl. at 428. To that end, mirroring their requests during the 2020 discovery period, plaintiffs ask the government to provide "(1) all information Kennell used in the DPP calculations for each *Potential Class member hospital*, as well as the underlying calculations, and (2) all hospital outpatient claims data available for each of the *Potential Class member hospitals* during the relevant time period." Pls.' Disc. Mot. at 8–9 (emphasis added). Plaintiffs argue this discovery will "benefit . . . this case" by providing the radiology data needed to determine "who is in the [now-narrowed] class." Pls.' Disc. Reply at 2, 9 ("Plaintiffs' damages are now limited to those claims involving errors in the [g]overnment's data"); Tr. at 57:1. The government has not refuted this claim. Tr. at 132:16–25 ("THE COURT: Just to make sure I understand, can you just quickly articulate the prejudice to the [g]overnment [from the Motion to Compel the data]? . . . [THE GOVERNMENT:] The [prejudice from the] [M]otion to [C]ompel is a significant reasonableness and proportionality concern . . . ."); Tr. at 56:18–57:14 ("[PLAINTIFFS:] [W]e really followed the Court's lead, looking at the summary judgment opinion saying . . . go back and figure out now what we are dealing with . . . [with respect to] who is in the class . . . only on the [g]overnment's [data] . . . . [THE GOVERNMENT:] I firmly disagree with that [procedural move]. I think that [p]laintiffs are trying to jump their original expert report . . . [a]nd under the law, [they] can't."). Rather, the government's primary prejudice-related allegation is plaintiffs' request violates the

- 14 -

"[r]easonableness and proportionality" tenants set forth in RCFC 26(b)(1) because "[t]he [g]overnment has already incurred substantial expense," Def.'s Disc. Resp. at 36, and plaintiffs have "not established a right to discovery of [non-named plaintiff] hospitals . . . based on what they have shown." Tr. at 130:10–14.

As the Court noted above, the government cannot argue plaintiffs' document discovery request was too early before summary judgment and too late now that the government has incurred greater expense in litigating this case. *See supra* Section IV.A.1. Neither party knew the substantial impact summary judgment would have on the trajectory of this case, but the parties agreed to table plaintiffs' discovery requests until after the Court's summary judgment decision. *See Ingham Reg'l Med. Ctr.*, 163 Fed. Cl. at 395; SC Tr. at 27:13–23. As evidenced by the recent data analysis performed by the government, after summary judgment, "[g]overnment data is required to evaluate which hospitals were affected by the [g]overnment's breach of" contract. 25 Oct. 2023 JSR at 16. Plaintiffs cannot be expected to argue, and the Court cannot "rule on[,] numerosity [and related class certification factors] if there[ i]s no evidence regarding the approximate number of hospitals who would fit the . . . requirements allowed in the summary judgment order." Tr. at 108:6–11. The parties must both have an opportunity to review the relevant data held by the government to determine which hospitals should, or should not, be included in the putative class.[8] *See id.* The requested data, which includes the pertinent "outpatient claims data" and the information "used in the DPP calculations," Pls.' Disc. Mot. at 8–9, is therefore highly relevant to the next step in this case—class certification—and, rather than delay this case, having this data will enable the Court to decide plaintiffs' motion for class certification more efficiently. *Davita HealthCare Partners, Inc.*, 125 Fed. Cl. at 399 ("[T]he additional time . . . does not warrant the severe sanction of exclusion of data helpful to both parties in this litigation."). To the extent the government argues the scale of the information requested is "grossly disproportionate to the needs of the case," Tr. at 110:22, the government ignores: (1) plaintiffs' and the Court's substantial need to understand "who would be in the class" come time to brief and rule on class certification, Tr. at 55:24–25; and (2) the inability of plaintiffs and the Court to access this data "exclusively in [the government's] possession" without production by the government, Pls.' Disc. Reply at 3. *See Davita HealthCare Partners, Inc.*, 125 Fed. Cl. at 399; RCFC 26(b)(1) ("[P]arties may obtain discovery regarding any nonprivileged matter that is relevant . . . and proportional . . . *[considering] the parties' relative access to [the] relevant information . . . .*" (emphasis added)). The government likewise overlooks its ability to rebut any arguments plaintiffs make using this data both before and at trial. *See Alta Wind I Owner Lessor C*, 154 Fed. Cl. at 217 ("Other Court of Federal Claims judges have noted that providing the government an opportunity to file a rebuttal mitigates any prejudice that may have otherwise existed in providing plaintiff the opportunity to reopen the record."). The documents plaintiffs request are therefore highly relevant and proportional to the needs of the case as they will provide plaintiffs and the Court

---

[8] This is not a case where, as the government alleges, plaintiffs are "attempt[ing] to use discovery to find new clients upon learning of infirmities in the claims of putative class representatives." Def.'s Disc. Resp. at 26–27 (first citing *In re Williams-Sonoma, Inc.*, 947 F.3d 533, 540 (9th Cir. 2020); then citing *Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152, 160 (6th Cir. 2010); *Douglas v. Talk Am., Inc.*, 266 F.R.D. 464, 467 (C.D. Cal. 2010); *Falcon v. Phillips Elec. N. Am. Corp.*, 304 F. App'x 896, 898 (2d Cir. 2008)). Rather, plaintiffs are requesting access to information held by the government to adequately brief class certification *on behalf of the existing named plaintiffs* and the putative class. *See* Pls.' Disc. Mot. at 2 ("After completion of this discovery, [p]laintiffs would then file an amended motion for class certification.").

information necessary for a thorough analysis of class certification. *Florsheim Shoe Co., Div. of Interco, Inc.*, 744 F.2d at 797; *Davita HealthCare Partners*, 125 Fed. Cl. at 399 ("[T]he additional time . . . does not warrant the severe sanction of exclusion of data helpful to both parties in this litigation."); RCFC 26(b)(1).

The Court accordingly finds any prejudice to the government caused by the scope of plaintiffs' document request is mitigated by the benefit of the requested information to the efficient resolution of this case.[9] *See High Point Design LLC*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244); Tr. at 118:2–6. The government will have ample opportunity to oppose any supplemental expert reports presented by plaintiffs using the requested data, including through cross-examination of plaintiffs' experts at trial. *See Alta Wind I Owner Lessor C*, 154 Fed. Cl. at 217 ("Other Court of Federal Claims judges have noted that providing the government an opportunity to file a rebuttal mitigates any prejudice that may have otherwise existed in providing plaintiff the opportunity to reopen the record."). The Court therefore finds plaintiffs were diligent in pursuing this document discovery request and the government will not experience prejudice sufficient to warrant denying plaintiffs' Motion as to the request. The Court accordingly grants plaintiffs' document discovery request as tailored, *infra* Section V, to the liability found in the Court's November 2022 Summary Judgment Order, as there is good cause to do so. *See High Point Design LLC*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244); 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.2 (3d ed. 1998) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case."); Pls.' Disc. Mot. at 8–9.

### B.   Plaintiffs' Request to Depose a Government Corporate Designee Pursuant to Rule 30(b)(6)

Plaintiffs also seek leave to "depose a [g]overnment corporate designee to identify which data sources were . . . available to the [g]overnment from the relevant time period, and where the relevant claims data resides." Pls.' Disc. Mot. at 8. Plaintiffs specify they are seeking "an hour . . . of deposition, just getting the [g]overnment to . . . confirm . . . the data sources" they have now and had during the relevant time periods "to make sure . . . there's been no spoliation . . . ." Tr. at 117:22–25. In response, the government contends it previously identified an agency employee "as an individual with 'discoverable information concerning TRICARE Encounter Data (TED), the DHA Military Health System Data Repository (MDR), and the creation, content and maintenance of records in both of those databases[,]' . . . [but] plaintiffs *expressly declined a deposition* during the established periods of fact and expert discovery[] and elected instead to proceed through limited interrogatories." Defs.' Disc. Resp. at 33. The government alleges "[p]laintiffs cannot reasonably be said to have been diligent in pursuing the

---

[9]  The Court emphasizes the government alone is in possession of the TMA data potentially comprising "tens of millions of records." Tr. at 134:3. As such, the government is the only party capable of sorting and producing the large volumes of information. *See* RCFC 26(b)(1) ("[P]arties may obtain discovery regarding any nonprivileged matter that is relevant . . . and proportional . . . [considering] the parties' relative access to [the] relevant information."). Indeed, at the 19 December 2023 status conference, the government agreed it is capable of reviewing all data in its possession to identify line items of putative class members missed during DPP extraction due to issues akin to those impacting twelve out of the thirteen unextracted line items for Integris Baptist and Integris Bass Baptist. *See* 25 Oct. 2023 JSR; *see also Ingham Reg'l Med. Ctr. v. United States*, 163 Fed. Cl. 384, 409, 412 (2022).

deposition that they now request when they intentionally eschewed [an offered deposition] during the established period of fact discovery."  *Id.*  The government also reasserts its prejudice and diligence-related arguments discussed *supra* Section IV.A.1–2.  *See, e.g.*, *id.* at 28 ("Plaintiffs make no claim that it was impossible during two separate discovery periods for them to have served on the [g]overnment . . . the deposition notice . . . because it obviously was not."); Tr. at 130:8–10 ("THE COURT:  . . . So what's the prejudice though?  [THE GOVERNMENT]: Reasonableness and proportionality.").

### 1.   Diligence

The government's only novel diligence argument related to plaintiffs' deposition request is plaintiffs previously declined an opportunity to depose an "an individual with 'discoverable information concerning [TED and MDR], and the creation, content and maintenance of records in both of those databases."  Defs.' Disc. Mot. Resp. at 33.  The government otherwise broadly asserts plaintiffs were not diligent in pursuing their discovery requests.  *See, e.g.*, *id.* at 28.  As determined *supra* Section IV.A.1, plaintiffs were diligent with respect to pursuing the government's data and related information at the appropriate time during discovery.  *See, e.g.*, App. to Pls.' Disc. Mot. at 23–24.  The Court therefore only addresses the government's argument related to previous deposition opportunities below.

A "trial court 'has wide discretion in setting the limits of discovery.'"  *Schism*, 316 F.3d at 1300 (quoting *Moore*, 927 F.2d at 1197).  Notwithstanding, modification of a court-imposed schedule may be done "only for good cause and with the judge's consent."  RCFC 16(b)(4). "When assessing whether good cause has been shown, 'the primary consideration is whether the moving party can demonstrate diligence.'"  *High Point Design LLC*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244).  The government's primary contention—plaintiffs were not diligent in pursuing the requested deposition because they turned down an offer to depose a government employee in May 2019—assumes a party cannot be diligent if they have, at any time in the past, "eschewed [similar discovery.]"  Defs.' Disc. Mot. Resp. at 33.  Over the past four and a half years, however, this case has changed substantially.  *See Alta Wind I Owner Lessor C*, 154 Fed. Cl. at 227 (granting additional discovery upon remand and reassignment of the case); *see also Geneva Pharms. Tech. Corp.*, 2005 WL 2132438, at *5 ("[M]aterial events have occurred since the last discovery period, which justice requires that the parties have an opportunity to develop through discovery.").  As noted by plaintiffs, "[t]he Court's ruling on the [g]overnment's Summary Judgment Motion . . . fundamentally altered the scope of this case," Pls.' Disc. Mot. at 8, by substantially narrowing the potential class members and limiting plaintiffs' "damages . . . to [two] claims involving errors in the [g]overnment's data," Pls.' Disc. Reply at 3.  "[T]o analyze the extent of the . . . error[s]" in the government's data, 25 Oct. 2023 JSR at 16, and perform "a more accurate damages calculation" for the putative class members, Pls.' Reply at 7, plaintiffs therefore need to understand the data sources available to the government now and at the time of line item extraction.  *See* 25 Oct. 2023 JSR at 17 ("The only way to evaluate whether Mr. Kennell failed to extract all relevant data . . . for the entire class is for the [g]overnment to produce . . . [the discovery] [p]laintiffs seek.");  Pls.' Disc. Reply at 7.  In 2020, in contrast, at which time plaintiffs "elected . . . to proceed through limited interrogatories" rather than conduct the government's offered deposition, the Court had not yet narrowed the scope of the case or limited the damages calculations to the government's data.  Defs.' Disc. Resp. at 33.  During the

initial discovery periods, plaintiffs still reasonably believed their own data might be relevant and did not yet understand the importance of the government's data. *See* Pls.' Disc. Reply at 3; *see also* 25 Oct. 2023 JSR at 16. Plaintiffs therefore did not exhibit a lack of diligence by not accepting the government's offer to depose an individual whose testimony, at the time, was less relevant to the case. The government has accordingly failed to produce evidence sufficient to show plaintiffs were not diligent in pursuing the requested deposition. *Schism*, 316 F.3d at 1300; *High Point Design LLC*, 730 F.3d at 1319; *see also Alta Wind I Owner Lessor C*, 154 Fed. Cl. at 227.

## 2. Prejudice

As noted *supra* Section IV.A.2, courts considering requests to reopen discovery may consider whether and to what extent granting the request will prejudice the opposing party, including via delaying the litigation. *High Point Design*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244); *Wordtech Sys.*, 609 F.3d at 1322 (quoting *Lockheed Martin Corp.*, 194 F.3d at 986). Regarding plaintiffs' deposition request, the government argues granting plaintiffs' deposition request will, like plaintiffs' document requests, result in additional expense and "substantial delay in bringing this matter to resolution." Def.'s Disc. Resp. at 36. Plaintiffs indicated at oral argument, however, the requested deposition will be "an hour," with the goal being simply to understand "the data sources" in the government's possession. Tr. at 117:22. To the extent this short deposition of a government employee, which the government was prepared to allow for several years ago, will allow the case to proceed "more efficient[ly]" to class certification with fewer "hypothetical back-and-forth[s] between the parties" related to considerations like numerosity, *see* Tr. at 118:2–6, the Court finds the minimal potential prejudice to the government from this deposition is outweighed by the value of this information to the later stages of this litigation. *Davita HealthCare Partners, Inc.*, 125 Fed. Cl. at 399 ("[T]he additional time . . . does not warrant the severe sanction of exclusion of data helpful to both parties in this litigation."). The Court therefore does not find the government's argument regarding diligence or prejudice persuasive with respect to plaintiffs' deposition request. The Court accordingly grants this request as there is good cause to do so.[10] *High Point Design LLC*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244); 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.2 (3d ed. 1998) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").

## C. Supplemental Expert Report

Plaintiffs finally request leave to "serve a supplemental expert report on . . . relevant class

---

[10] To the extent the government intended its arguments related to proportionality and relevance to apply to plaintiffs' deposition request, the Court is unpersuaded. *See* Def.'s Disc. Resp. at 36. A single deposition lasting approximately one hour on subject matter on which the government previously offered to permit a deposition is not disproportionate to the needs of this case. *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)); RCFC 26(b)(1). Likewise, the subject matter—the sources of the data plaintiffs request access to—is highly relevant in ensuring a complete and accurate data set free of spoliation. *Schism*, 316 F.3d at 1300 (quoting *Moore*, 927 F.2d at 1197); RCFC 26(b)(1); *see supra* Section IV.A.2.

issues" upon completion of the above-requested discovery. Pls.' Disc. Mot. at 2. Specifically, plaintiffs wish to "submit a supplemental expert report analyzing the [government's] data and applying the DPP methodology to the correct universe of outpatient radiology line items . . . ." *Id.* at 10; *see also* Pls.' Disc. Reply at 3 ("Plaintiffs' supplemental expert report would identify the scope of the class, as requested by the Court."); Tr. at 73:10–14 ("[PLAINTIFFS:]  [I]t is a very complex formula.  And I think that it is something that . . . you would want someone with experience with these data line items going through and doing it . . . it's [objective] math. . . . It's essentially a claims administrator."). Plaintiffs make clear their initial expert report was an attempt at extrapolating the named plaintiffs' data "across the class to come up with . . . estimated number[s]," which they now wish to update with "the exact numbers" once they receive the government's data. Tr. at 69:4–16. Plaintiffs contend "[r]eopening discovery is warranted where supplemental information from an expert would assist the Court in resolving important issues . . . [s]uch [as] . . . 'presenting the Court with a more accurate representation of plaintiffs' damages allegations.'" Pls.' Disc. Reply at 6 (first citing *Kennedy Heights Apartments Ltd. I*, 2005 WL 6112633, at *3–4; and then quoting *Alta Wind I Owner Lessor C*, 154 Fed. Cl. at 217). Likening this case to *Alta Wind*, plaintiffs argue the Court should conclude here an "expert report will provide the Court with a damages estimate more accurately reflecting plaintiffs' damages position [in light of the changes to the case rendered by summary judgment] . . . and therefore will likely assist the Court." *Id.* at 7 (quoting *Alta Wind*, 154 Fed. Cl. at 216); Tr. at 68:17–69:16 ("[PLAINTIFFS:]  With respect to Ms. Jerzak and the breach of contract, she did two things [in her report.] . . . One, she compared the hospital line items to the government line items for the named [p]laintiffs and did a straight objective calculation of what was the difference. . . .  She also took those numbers and extrapolated them across the class to come up with an estimated number. THE COURT:  A hypothetical. [PLAINTIFFS]: Yes . . . [r]ecognizing that if the class was certified . . . we'd have to do the exact numbers."). Plaintiffs conclude this report will "not prejudice the [g]overnment in any way, and would actually benefit the [g]overnment" by providing an "opportunity . . . to oppose" additional contentions appropriate to the posture of the case. *Id.* at 8 (emphasis omitted) (citing *Alta Wind I Owner Lessor C*, 154 Fed. Cl. at 216). Plaintiffs note, however, "in [their] mind, this [report] is something that always was going to happen *after certification*" at the merits stage, Tr. at 73:15–16 (emphasis added), as they do not "need an expert report for class certification because" the government "admitted breach," Tr. at 96:3–4; Tr. at 63:22–64:6 ("[PLAINTIFFS:]  [L]et's say the Court certified a class here.  *The next step . . . is for merits.  Someone is going to have to spit out a report* saying here are the class members and when I run their . . . data . . . here are the differences and here's the number that gets spit out." (emphasis added)).

    The government reiterates its diligence and prejudice arguments discussed *supra* Sections IV.A–B with respect to plaintiffs' request for leave to file a supplemental expert report.  The government likewise refutes the notion plaintiffs' current expert report is a "placeholder . . . that was[] [not] really meant to be real." Tr. at 70:19–20. In other words, the government contends plaintiffs "meant th[eir earlier] expert report" to apply to "their currently pending motion for class cert[ification]," Tr. at 71:21–23, and now "seek to have the Court rescue them from their own litigation choices," including the choice to file "expert damages models [that] could never be used to measure class damages." Def.'s Disc. Resp. at 16–17. Plaintiffs should not be permitted to file a new expert report, according to the government, simply because "they have not . . . marshaled any legally cognizable expert evidence concerning the few claims that remain"

after summary judgment. Def.'s Disc. Resp. at 17. To the extent plaintiffs concede the requested expert report "is for [the] merits" stage and not necessary for class certification, however, the government believes "a class cannot be certified without a viable expert damages methodology meeting the requirements of *Comcast*," meaning plaintiffs' pending motion for class certification automatically fails because "the only expert evidence in the record that bears on the two types of breaches found by the Court is . . . offered by the [g]overnment." *Id.* at 22–23 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013)). Indeed, according to the government, "plaintiffs are left with no expert model at all as to the few remaining contract claims," meaning they cannot adequately allege "damages are capable of measurement on a class[-]wide basis" as required by *Comcast*. *Id.* at 24 (quoting *Comcast*, 569 U.S. at 34).

Concerning plaintiffs' request for leave to file an expert report, the government broadly asserts plaintiffs were not diligent in pursuing their discovery requests. *See, e.g.*, Def.'s Disc. Resp. at 28. As determined *supra* Section IV.A.1, however, plaintiffs were diligent with respect to pursuing the requested discovery generally. Plaintiffs requested the relevant data in February and July 2020 and planned to replace "the extrapolation" present in their earlier expert reports with analysis "using actual data" upon completion of this requested discovery. *See supra* Section IV.A.1; Tr. at 136:15–23. The Court's November 2022 Summary Judgement Order narrowed the scope of this case and further highlighted the need for this additional discovery related to the remaining issues and potential class members. *See supra* Section IV.A.1, B; *Ingham Reg'l Med. Ctr.*, 163 Fed. Cl. at 427.

Further, to the extent the government alleges plaintiffs requested expert report is prejudicial, the government will have sufficient time and opportunity to rebut any supplemental expert report filed by plaintiffs. *See supra* Section IV.A.2, B.2; *Alta Wind I Owner Lessor C*, 154 Fed. Cl. at 217 ("Other Court of Federal Claims judges have noted that providing the government an opportunity to file a rebuttal mitigates any prejudice that may have otherwise existed in providing plaintiff the opportunity to reopen the record."). The contemplated expert report, which will perform the DPP analysis for outpatient radiology claims data within the scope of the Court's November 2022 liability findings for each putative class member hospital using "only the [government's] data" as required by the Court's Summary Judgment Order, could also aid the Court at the merits stage in determining "the amount[] that each hospital is owed." Tr. at 78:7–15. The requested report therefore would likely not be prejudicial to the government to such an extent as to "warrant the severe sanction of exclusion of [useful] data." *Davita HealthCare Partners, Inc.*, 125 Fed. Cl. at 399; *High Point Design LLC*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244); 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.2 (3d ed. 1998) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").

Plaintiffs acknowledge, however, the updated calculations they plan to include in their requested expert report are not necessary until "after [class] certification"—at the merits stage. Tr. at 73:15–16. At oral argument, plaintiffs clearly stated they do not "need an expert report for class certification," which is the next step in this litigation. Tr. at 96:3–4. To the extent the government argues plaintiffs' certification motion will necessarily fail because plaintiffs lack evidence "damages are [measurable] . . . on a class[-]wide basis" in response to this statement by plaintiffs, Def.'s Disc. Rep. at 23 (quoting *Comcast*, 569 U.S. at 34), plaintiffs respond the DPP

is the requisite means of "calculat[ing] damages for every single class member," Tr. at 136:4–5. While the Court reserves judgment as to plaintiffs' class certification motion, plaintiffs' argument the DPP provides their model for calculating damages on a class-wide basis because it is a uniform model applicable to all putative class members is sufficient to suggest plaintiffs need not fully calculate alleged damages in a supplemental expert report at this time.  Tr. at 54:9–15 ("[PLAINTIFFS:]  I think the type of cases that [the government] is talking about [like *Comcast*] where there's been [a failure by the plaintiffs to actually address the calculation of class-wide damages, are inapposite because] we haven't offered a model that is deviating from the contract.  What we're saying . . . the experts are going to . . . essentially crunch[ the] numbers [using the DPP].").  Plaintiffs can do so if and when the merits of this case are argued at trial.  This is not a case like *Comcast*, in which the plaintiffs presented to the court "a methodology that identifies damages that are not the result of the wrong" at issue.  *Comcast*, 569 U.S. at 37.  Here, in contrast, the parties indicated at oral argument plaintiffs' proffered DPP methodology from the parties' DPP Contracts appears capable of calculating damages for all potential class members.  Tr. at 136:1–5 ("[PLAINTIFFS:]  But what I will tell you that we're going to do with the data is we are going to have the auditor [i.e., the expert] plug [the government's] data into the DPP.  That is the model.  That is [what] the contract . . . dictates  . . . how you calculate damages for every single class member."); Tr. at 54:12–13 ("[PLAINTIFFS:]  [W]e haven't offered a model that is deviating from the contract."); Tr. at 93:2–5 ("THE COURT:  But the model is just what you said is—if I understood correctly, is that the report is just DPP data discrepancy output.  [THE GOVERNMENT]:  For each individual [p]laintiff."); *see* Tr. 93:2–95:25.  The Court accordingly denies plaintiffs' request for an expert report without prejudice in the interest of the efficient disposition of plaintiffs' class certification motion.  *High Point Design LLC*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244); 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.2 (3d ed. 1998) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").  To the extent plaintiffs "would want in [the] merits" stage an expert report from an "auditor to make sure" the parties "all agree on" damages calculated via the DPP, plaintiffs may refile this motion at that time.  Tr. at 96:12–13 (plaintiffs).

## V.    Scope of Granted Discovery and Next Steps

As discussed *supra* Section IV:

1.  The Court grants plaintiffs' deposition request.

2.  The Court grants plaintiffs' document requests as follows:  Plaintiffs are permitted to serve amended document discovery requests for all putative class member hospitals tailored to seek only those documents required for plaintiffs to identify "breach[es] of TMA's [contractual] duty" under the DPP Contract akin to either:  (1) the government's failure to extract "thirteen line items for Integris Baptist and Integris Bass Baptist"; or (2) the government's failure to adjust "five . . . line items" for Integris Baptist "during the DPP because of an alternate zip code."  *See Ingham Reg'l Med. Ctr. v. United States*, 163 Fed. Cl. 384, 409, 412 (2022).  This specification ensures plaintiffs' requests remain within the scope of the Court's findings of liability in November 2022.  *Id.*  The Court notes at the 19 December 2023 status conference the government agreed it is possible to

execute the same analysis performed on the named plaintiffs' data in the 25 October 2023 JSR on the government's data for all putative class members.[11]

3.  The Court denies plaintiffs' request to file a supplemental expert report without prejudice.  Plaintiffs may move to file an updated expert report later in this litigation as necessary, at which time the government will be permitted to file a response report.

Within three weeks of the date this Order is issued, the parties shall file a JSR comprised of the following:

1.  Plaintiffs' discovery requests revised in accordance with the above clarifications;

2.  The parties' proposed schedule for discovery, including a timeline for plaintiffs' deposition and the exchange of documents between the parties; and

3.  The parties' proposed schedule for re-briefing class certification after all discovery closes, including a proposed timeline for the filing of new expert reports.

As noted by the Court at the 19 December status conference, plaintiffs' next step should be to analyze the government's data for the six named plaintiffs already in plaintiffs' possession to assist plaintiffs in tailoring their document requests as discussed above.

Further, at the 19 December 2023 status conference, the parties agreed the partial grant of plaintiffs' Discovery Motion moots plaintiffs' pending Motion to Certify Class Action and Appoint Class Counsel, ECF No. 146, as the parties will need to re-brief these issues following the narrowing of this case on summary judgment and the upcoming additional discovery.  The government agreed its pending Motion to Exclude Inadmissible Evidence Relied Upon in Plaintiffs' Motion for Class Certification, ECF No. 204, is accordingly moot.  The government may refile a similar motion if needed during future class certification briefing.  Plaintiffs likewise agreed to withdraw without prejudice their Motion to Exclude the Expert Opinions and Continued Participation of David Kennell, ECF No. 251, pending further discovery and briefing.  Further, plaintiffs agreed, given the scope of this case after summary judgment, the expert report of Anthony Fay is moot.  Accordingly, the government's Motion to Exclude the Expert Opinions of Anthony Fay, ECF No. 206, is moot.  Finally, plaintiffs stated they plan to file a new expert report replacing that of Jane Jerzak later in this litigation.  The government noted at the 19 December status conference plaintiffs' replacement of Ms. Jerzak's current report will render the government's Motion to Exclude the Expert Opinions of Jane Jerzak, ECF No. 205, moot as well.

---

[11]  As discussed *supra* note 4, in the 25 October 2023 JSR, the government explained why twelve of the thirteen line items improperly excluded for Integris Baptist and Integris Bass Baptist were not extracted.  At the 19 December 2023 status conference, the government indicated it can now search its database for line items improperly excluded due to this same error for all hospitals that participated in the DPP.  The government noted, however, it is not aware of what caused the thirteenth line item to be missed so cannot create search criteria appropriate to identifying other similar misses.  Finally, to identify missed alternate zip codes, the government stated it would need zip code information from plaintiffs and the putative class members.

**VI.     Conclusion**

For the foregoing reasons, and as specified *supra* Section V, the Court **GRANTS-IN-PART and DENIES-IN-PART** plaintiffs' Motion for Leave to Conduct Certain Limited Additional Discovery and to Submit Supplemental Expert Report, ECF No. 269, and **FINDS as MOOT** plaintiffs' Motion for Clarification or, in the Alternative, to Compel Production, ECF No. 161.[12]  As noted *supra* Section V, the Court **FINDS as MOOT** plaintiffs' Motion to Certify Class Action and Appoint Class Counsel, ECF No. 146, the government's Motion to Exclude Inadmissible Evidence Relied Upon in Plaintiffs' Motion for Class Certification, ECF No. 204, the government's Motion to Exclude the Expert Opinions of Anthony Fay, ECF No. 206, and the government's Motion to Exclude the Expert Opinions of Jane Jerzak, ECF No. 205.  As agreed to at the 19 December 2023 status conference, plaintiffs **SHALL WITHDRAW** their Motion to Exclude the Expert Opinions and Continued Participation of David Kennell, ECF No. 251, without prejudice.  Finally, as noted at oral argument, *see* Tr. at 139:10–140:8, the Court **STRIKES** the government's Notice of Additional Authority, ECF No. 273, as deficient and **GRANTS** the government's Unopposed Motion for Leave to File Notice of Supplemental Authority, ECF No. 274, for good cause shown.  The parties **SHALL FILE** the joint status report discussed *supra* Section V on or before 23 January 2024.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge

---

[12]  At oral argument, the parties agreed the Court ruling on plaintiffs' current Discovery Motion is also a "ruling on [plaintiffs' previous Motion to Compel,] ECF [No.] 161."  Tr. at 139:2–9.